PARTRIDGE et al. (MARTIN et al., Interveners) v. AINLEY et al.

District Court, S. D. New York.
July 26, 1939.

C. Walter Randall, of New York City (C. Walter Randall and H. H. Levin, both of New York City, of counsel), for complainants.

Miller, Owen, Otis & Bailly, of New York City (E. J. Bennett and T. J. Namack, both of New York City, of counsel), for complainants-interveners.

Bangser & Kaufmann, of New York City (Adolph Bangser, of New York City, of counsel), for defendant Edw. J. Isaacs.

Sidney Kalfus, of New York City, for defendant David L. Kaye.

Milton Siegel, of New York City, for defendant A. S. Hanau.

Henry Woog, of New York City, for defendant Hattie G. Westmore.

Joseph Wheless, of New York City, for defendant Mamie T. Wheless.

Blackwell Bros., of New York City, for defendant J. M. Blackwell, executor of Florence A. Smallwood's estate.

David E. Jeffery, of Lockport, N. Y. (Irving Smith, Jr., of New York City, of counsel), for defendant Daniel R. Sillesky.

O'Brien, Driscoll & Raftery, of New York City (Benjamin Pepper and Alton S. Wolfert, both of New York City, of counsel), for defendant W. H. Dempsey.

MacIntyre, McNally & Downey, of New York City (Francis J. MacIntyre, of New York City, of counsel), for defendant Lloyd P. Hepburn.

Stanley Gray Horan, of New York City, for defendant Virginia C. DeMurias.

Sheer & Delemos, of New York City (S. Charles Sheer, of New York City, of counsel), for defendant G. E. Meyer.

George S. Hills, of New York City (Leslie D. Taggart, of New York City, of counsel), for defendants Wm. R. Compton, R. P. Compton, and D. F. Sullivan.

Cohen & Haas, of New York City (Isidore Cohen, of New York City, of counsel), for defendant Alex Helfand.

Isaac Roth, of New York City (A. Bertram Roth, of New York City, of counsel), for defendant W. Burke Harmon.

WOOLSEY, District Judge.

My decision herein is that the plaintiffs may have judgment, as hereinafter provided, with costs and all taxable disbursements and allowances against all the defendants appearing herein, except defendant J. M. Blackwell, as Executor of Florence Smallwood, as against whom the complaint will be dismissed with costs and all taxable disbursements and allowances for the reasons hereinafter stated.

I. My subject matter jurisdiction in this cause is based on the fact that the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, and arises under the Laws of the United States, Title 28, United States Code, Section 41(1)(a), 28 U.S.C.A. § 41(1)(a).

Subject matter jurisdiction herein on this basis has been sustained, and a remedy in equity for the relief herein sought has been approved by the Circuit Court of Appeals of this Circuit in Brusselback et al. v. Cago Corporation et al., 85 F.2d 20.

II. In view of Rule 52 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, it is now a work of supererogation to write a considered opinion in a non-jury case, for its place will be taken by formal findings of fact and conclusions of law separately stated.

There have also been elaborate pretrial concessions of fact herein which were settled before Judge Knox, which have greatly simplified the trial herein, and to which recourse may be had for any proposed findings of fact not inconsistent herewith.

I will content myself, therefore, in this cause with a very short reference to such facts as I feel should be here mentioned and a short statement of my conclusions of law.

III. This is a suit by creditors of the St. Louis Joint Stock Land Bank to enforce stockholders' double liability imposed on them by Title 12, United States Code, § 812, 12 U.S.C.A. § 812.

The defendants remaining in the cause, as I understand, after discontinuances based on settlements or granted for other reasons and the severances granted at the commencement of the trial in respect of defendants named but not served, there remain, on my count, fourteen defendants in the cause.

The following six defendants are registered holders of bank stock:

| Name | Number of Shares |
| --- | --- |
| Helfand & Abel, Inc. | 300 |
| David L. Kaye | 20 |
| George E. Meyer | 55 |
| Robert S. Watts | 15 |
| John J. Van Voorhis | 10 |
| William R. Compton | 244 |

The following eight defendants, who exchanged their bank stock for stock of the Land Bank Securities Company, had held bank stock before the receivership as follows:

| Name | Number of Shares |
| --- | --- |
| James M. Blackwell as Executor of Smallwood | 20 |
| William H. Dempsey | 50 |
| W. Burke Harmon | 15 |
| Virginia C. DeMurias | 55 |
| Daniel R. Sillesky | 44 |
| Hattie G. Westmore | 25 |
| Edward J. Isaacs | 17 |
| Randolph P. Compton | 12 |

Defendants Robert S. Watts, Helfand & Abel, Inc., and John J. Van Voorhis have defaulted and, as against them, the trial has been an inquest.

IV. *The Question of Insolvency and the Quantum of Assessment.*

I hold that the receivership of the St. Louis Joint Stock Land Bank which was set up by the Federal Farm Loan Board on June 1, 1932, is a matter with which I cannot properly deal because it is an act of an executive administrative board not shown to have been wrong. Therefore, insolvency on May 2, 1932, must be assumed.

The total outstanding stock of the bank at the date of the receivership was, and now is, 14,300 shares of a par value of $100 each. Those shares, therefore, have a total par value of $1,430,000.

The deficit of the bank at the present time is upwards of $8,000,000. The liability of the stockholders, therefore, under Title 12, United States Code, § 812, 12 U.S.C.A. § 812, is for a 100% assessment on their stock.

Indeed the present insolvency of the bank to this extent is not contested in behalf of the defendants appearing at the trial.

Furthermore, I find that at all times from 1933 up to the present time the deficit has been such that a 100% assessment would have been necessary if recovery had been secured during that period.

During the elapsed time, therefore, between any possible date of recovery of a judgment against the stockholders, and the present time, the quantum of their liability has not increased.

V. As is usual in these suits against stockholders of insolvent joint stock land banks many defences have been pleaded which have not been pressed at the trial or on the argument.

Only the following three defences remain for me to consider:

(1) That the stockholders who made transfer to their bank stock to the Land Bank Securities Company can escape their double liability.

(2) That as the Rules of Civil Procedure (28 U.S.C.A. following section 723c) have provided that there should be only one form of civil action, and since this cause—though commenced before September 16, 1938 when the Rules became effective—has been prepared and tried under the Rules, the three year New York Statute of Limitations—New York Civil Practice Act, § 49—is applicable and the claims of the plaintiffs are barred thereby.

(3) That, even if this be not so, the plaintiffs have been guilty of laches in not prosecuting their cause of action diligently, and, consequently, that the complaint must be dismissed, at least as to any defendants who have shown that they have been prejudiced.

I shall now deal shortly with these three defences.

## VI. Conclusions of Law.

### A. Status of Land Bank Securities Company:

I hold that owners of bank stock who transferred it to the Securities Company did not escape double liability on their bank stock by such transfer.

I find that this was not a case of a bona fide sale of the bank stock but was another instance—whereof there are many in the books—e. g. Barbour v. Thomas, 6 Cir., 86 F.2d 510, 517; Ullrich v. Thomas, 6 Cir., 86 F.2d 678, 679; Metropolitan Holding Company v. Snyder, 8 Cir., 79 F. 2d 263, 266–268, 103 A.L.R. 912; Brusselback v. Cago Corporation et al., D.C., 24 F.Supp. 524, 529, 530; Holmberg v. Anchell et al., D.C., 24 F.Supp. 594, 599, wherein a holding company without double liability on its stockholders was formed to hold bank stock, and possibly also (although that matters not) to unify the control of the bank as much as might be, looking to its reorganization.

Indeed in respect of the Land Bank Securities Company, both Judge Wham of the Eastern District of Illinois on May 25, 1938, in the case of Martin v. Alexander unreported, and Judge Davis of the Eastern District of Missouri in 1939 in the case of Ball v. St. Louis Joint Stock Land Bank et al., also unreported, have held that it did not constitute—to borrow the felicitous phrase of Mr. Justice Holmes, used in another connection, in Donnell v. Herring-Hall-Marvin Safe Co., 208 U.S. 267, 28 S.Ct. 288, 52 L.Ed. 481—a "non-conductor" of the double liability of the stockholders of the Bank.

### B. The Defence of the New York Statute of Limitations:

For the reasons given at length by me in Holmberg v. Anchell, D.C., 24 F. Supp. 594, at page 601, and the other authorities there cited, a cause of this kind is, in my opinion, exclusively of equitable cognizance. Consequently, as I there held, the cause was removed from the bar of the three year New York Statute of Limitations—New York Civil Practice Act, § 49. But there was not any question of the new Federal Rules of Civil Procedure there involved.

It would not be necessary to say anything further now if in this cause the original complaint had not been filed on March 3, 1937, and amendments thereto

filed November 14, 1938, and June 14, 1939, and the trial had in June 1939.

This cause which has thus been dealt with both under the old equity procedure and under the new rules, straddles the effective date of the Rules of Civil Procedure, September 16, 1938.

It involves, therefore, a closer question as to the application of the New York Statute of Limitations than the case of Todd v. Russell, 2 Cir., 104 F.2d 169, decided on May 8, 1939, by the Circuit Court of Appeals, for in that case all proceedings were had before the new Rules became effective.

I think, however, that, as this is a Federal cause of equitable cognizance, the question of whether the appropriate statute of limitations of New York State or the doctrine of laches should apply, is determined by whether the action was commenced before or after the new Rules became effective.

█ If, as here, it was commenced before the new Rules came into force, only the doctrine of laches is applicable. For to hold otherwise would be to impose a different and probably shorter limitation on a pending cause than that existing when the cause of action was commenced. Such a construction of the effect of the new Rules would, in my opinion, work injustice, and render them by the terms of Rule 86 not applicable.

### C. The Question of Laches:

#### (1) Elapsed Time.

In order, possibly, partly to promote unified control of the bank, but, as I find, principally to furnish supposed sanctuary for the shareholders thereof, the Land Bank Securities Company had been formed on October 27, 1930, under the laws of Delaware with the usual limited liability.

On June 1, 1932, the Federal Farm Loan Board declared the bank in default and insolvent, and appointed a receiver thereof.

On June 6, 1932, there was instituted in the United States District Court for the Eastern Division of the Eastern District of Missouri a suit against the bank and its shareholders by C. E. Partridge, one of the complainants herein, for the purpose of determining the shareholders' liability.

None of the defendants in the present action was then specifically named in said St. Louis action or was served by mail or publication therein; but plaintiff in said action alleged in his bill of complaint that he brought the suit against certain named defendants "individually * * * and against them as representatives of the class of all shareholders of said Bank", giving as his reason that the shareholders were too numerous and scattered over too wide an area to permit his naming all of them.

On November 19, 1932, there was instituted in the United States District Court for the Eastern Division of the Eastern District of Missouri a suit against the bank and its shareholders by the complainant-intervenors herein under the title of Frank C. Ball et al. against the Bank and its shareholders, for the purpose of determining the shareholders' liability. None of the defendants in the present action was then specifically named as a defendant in said action or was served by mail or publication therein; but plaintiff's said action alleged that the suit was brought against the stockholder defendants resident in Missouri individually "and as class representatives of all shareholders of said St. Louis Joint Stock Land Bank" and further alleged that the stockholders resident outside the State of Missouri were not joined as defendants because they resided outside the jurisdiction and were represented in the action by the St. Louis Joint Stock Land Bank.

The Partridge case, just mentioned, has not, as yet, come to trial.

The Ball case, just mentioned, was tried this year and an interlocutory decree for the plaintiffs entered therein.

There has been a succession of interlocutory proceedings between the Partridge and Ball interests in the Eastern District of Missouri, the purpose of which, apparently, was to determine whether Partridge or the Ball Committee should become the ultimate dominus litis in whatever representative suit was to be pressed against stockholders. See Partridge v. Martin, 8 Cir., 102 F.2d 284 at page 288. These various interlocutory proceedings flowered eventually in three appeals to the Circuit Court of Appeals for the Eighth Circuit. Martin v. Partridge, 8 Cir., 64 F.2d 591, decided March 30, 1933; Partridge v. Clarkson, 8 Cir., 72 F.2d 108, decided July 18, 1934; and finally in Partridge v. Martin, 102 F.2d 284, decided March 6, 1939, rehearing denied March 23, 1939 wherein most of the story of this period is summarized. The record in the

last named appeal was marked by me as Court's Exhibit No. 1 and parts of it were read into this record.

It was not, however, until the report of the decision of the Circuit Court of Appeals of this Circuit in Holmberg v. Carr, 86 F.2d 727, on December 7, 1936, that the lawyers representing the plaintiffs' interests in Missouri awoke to the fact that neither the theory of a domiciliary judgment fixing the quantum of the bank's insolvency or the appointment of a peripatetic receiver would avail them; but that creditors had to bring separate suits in each district and prove insolvency and the quantum of assessment in each such suit.

I have already expressed, in Holmberg v. Anchell, D.C., 24 F.Supp. 594, 602, 603, some astonishment at the procedural confusion in joint stock land bank insolvency cases that continued after the decision in 1929 of Wheeler v. Greene, 280 U.S. 49, 50, 51, 50 S.Ct. 21, 74 L. Ed. 160, until it was finally resolved by Christopher v. Brusselback, 302 U.S. 500, 58 S.Ct. 350, 82 L.Ed. 388, decided on January 3, 1938. But the confusion did exist, and as this suit was brought March 3, 1937, in reliance on the Carr case while the Christopher case was pending decision in the Supreme Court, I find that up to the filing of this suit there was not, under the principles laid down in Southern Pacific Company v. Bogert, 250 U.S. 483, 39 S.Ct. 533, 63 L.Ed. 1099, any laches on the part of the plaintiffs, in spite of the antagonism existing between the two sets of plaintiffs in Missouri.

There was, however, a delay in the prosecution of this suit from April 1937 to April 1938, due, I suspect, to the appeals above referred to which were pending in the Eighth Circuit and in which the firms representing the two sets of plaintiffs were still at odds with each other on the question of control of the subject matter of the litigation.

The remedy for such delay was by motion of the defendants to dismiss for failure to prosecute under Rule 33 of the General Rules of this Court in force up to September 16, 1938.

(2) *Prejudice.*

I have found that the quantum of liability of each shareholder has not been increased by the delay so that element of prejudice is eliminated.

It is necessary, therefore, to look elsewhere to see whether any individual defendant has been prejudiced by the delay.

The prejudice which may be availed of under a defence of laches is a prejudice which is intrinsic to the cause and which makes it unjust to give the plaintiff judgment. Such prejudice would be, for example, an increase in the quantum of liability or loss of evidence due to no fault of the defendant; but it would not involve extrinsic matters, which can be invoked only *after* a judgment has been recovered against the defendant, such as the deductions for inheritance, estate, or income taxes —relied on herein as prejudice by some of the defendants.

I hold, therefore, that the only prejudice made out in this cause is by the defendant Blackwell as executor of Mrs. Smallwood's estate for he has lost by her death any way of proving either the circumstances of the exchange of her bank stock for securities company stock, or what became of her ad interim certificate for the latter, which for aught that is known may have been sold but not transferred.

The complaint must, therefore, be dismissed as to Blackwell with costs, and all taxable disbursements and allowances.

VII. *As to Costs and Disbursements.*

As the amount recoverable against each defendant is fixed by the 100% assessment multiplied by the number of shares owned by him or in his behalf by the securities company, I shall not attempt to state the amount due from each defendant, but shall leave that to the plaintiff's attorneys to include in the final decree which the plaintiffs may have, except as to defendant Blackwell, with costs and all taxable disbursements and allowances equally divided amongst the defendants against whom the final decree is entered.

VIII. *Findings of Fact and Conclusions of Law.*

Attorneys for the plaintiffs must prepare and submit to me through the Clerk's office findings of ultimate facts and the conclusions of law herein indicated, in pursuance of Rule 52(a) of the Rules of Civil Procedure and in accordance with this opinion. I do not want any details of evidence submitted as findings of ultimate facts.

All proposed findings of fact and conclusions of law submitted to me must be typed in triple spacing so that I may

conveniently correct them if I wish to do so.

Attorneys for the plaintiffs must give five days notice of their proposed findings of fact and conclusions of law to the attorneys for the defendants.

Attorneys for the defendants, if they are so advised, may on the return day of such notice submit to me and serve on the plaintiffs' attorneys criticisms of the findings of fact proposed by them.

As under Rule 52(a) only findings of fact and conclusions of law which I sign will be filed as part of the record herein, I suggest this course for the defendants' attorneys because counter findings will not avail them anything. They must take their objections, if any, to my findings by way of appropriate assignments of error on any appeal which they may take.

After the findings of fact and conclusions of law are signed a final decree may be submitted in accordance herewith.